## THOMPSON v. TANNER.

(Court of Appeals of District of Columbia. Submitted December 13, 1922.
Decided March 5, 1923.)

No. 3831.

1. **Process ⟪⇒91—Order for publication cannot be made until return of process.**

Under Code, § 106, providing that no order for the substitution of publication for personal service shall be made until summons shall have been returned not to be found, an order of publication made before the return day of the summons is void.

2. **Process ⟪⇒91—After issuance of pluries process, publication before return day is premature.**

Where a plaintiff elects to rely on alias or pluries summons, as he may under the rule, he must abide its due return before taking steps to secure service by publication, so that an order for publication made before the return day of a pluries summons is void, notwithstanding the return of the original and alias summons, and especially where the pluries summons was the only one notifying defendant to appear and answer the petition for the appointment of a sequestrator.

3. **Process ⟪⇒138—Affidavit of mailing notice of publication to last known address is jurisdictional.**

An affidavit showing that copy of the notice of publication was mailed to the last known address of defendant, as required by Code, § 108, is essential to the jurisdiction of the court over defendant.

4. **Process ⟪⇒77, 103—Each step prescribed by statute for constructive service must be taken.**

Constructive service is a statutory proceeding, and each step required by the statute to be taken is essential to the validity of the service.

5. **Process ⟪⇒138—Omission of affidavit of mailing notice not cured by allegation defendant is evading service.**

The failure to make an affidavit of mailing a copy of notice of publication of the last known address of defendant is not cured by an averment that defendant was absenting himself from the District to avoid personal service, or that all efforts by plaintiff to locate defendant have been unavailing.

6. **Divorce ⟪⇒202—Personal decree for alimony cannot be rendered on constructive service.**

Though an action for divorce is a proceeding in rem, and a valid decree may be rendered without jurisdiction of the person of defendant, constructive service, either by publication or by actual service of process without the state, is insufficient to support a personal decree for alimony.

7. **Divorce ⟪⇒202—Decree for alimony on constructive service is valid only as to property within jurisdiction.**

A decree for alimony, when based on constructive service, is valid only in respect of property of defendant acquired by seizure within the immediate jurisdiction of the court.

8. **Divorce ⟪⇒266—Court can sequester property of temporarily absent defendant to pay separate maintenance of wife.**

Under Code, § 975, authorizing the rendering and enforcement of personal decrees for temporary alimony, the court can, in a case where the matrimonial domicile and the domicile of the wife are within the District, and the defendant husband has absconded therefrom to avoid service, sequestrate the property of defendant within the District for the payment of the temporary alimony.

Appeal from the Supreme Court of the District of Columbia.

Suit for divorce a mensa et thoro by Elizabeth Douglas Thompson against Silas S. Thompson. From an order appointing Louis E. Tan-

ner as sequestrator of defendant's property, and denying defendant's motion to set aside the appointment of the sequestrator on the ground the court was without jurisdiction, defendant appeals. Reversed and remanded.

Irving Williamson, of Washington, D. C., for appellant.

Alex Wolf and L. E. Tanner, both of Washington, D. C., for appellee.

Before VAN ORSDEL, Associate Justice, and MARTIN and SMITH, Judges of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. Elizabeth Douglas Thompson filed her bill in the Supreme Court of the District of Columbia for a divorce a mensa et thoro from appellant, her husband, and for maintenance and support. It is averred that on January 26, 1916, complainant filed her bill for maintenance and support against her husband, being equity cause No. 34049, on which a decree was entered granting her permanent alimony at the rate of $65 per month. It is further averred that thereafter a stipulation was entered into whereby, in consideration of the dismissal of equity cause No. 34049, the husband agreed to resume marital relations with his wife and deed to her certain property in this District, of the value of $2,000. After conveyance of the property and dismissal of the suit, complainant avers that she presented herself at the residence of appellant, for the purpose of resuming marital relations, and he not only refused to admit her, but used abusive language, threatening to do her bodily harm.

The stipulation contained a clause providing that:

"In the event the said defendant shall fail to properly support and maintain his said wife, the plaintiff, or shall force her to leave him by reason of his misconduct, or if he shall desert or abandon her, then the said plaintiff be and she is hereby given the right to again apply to the court for maintenance and support."

It appears that when this suit was instituted appellant had left the District. A summons requiring defendant to answer a rule to show cause was issued April 21, 1921, and returned May 9th, indorsed "Not found." An alias summons was issued on May 9, 1921, and returned June 7th indorsed "Not found." On July 29, 1921, a petition for the appointment of a sequestrator was filed, alleging evasion of service; that petitioner was advised that the defendant intended to remain away from the District of Columbia, though a resident thereof; that there is a monthly return from certain real estate of the defendant described therein; and praying for the appointment of a sequestrator to collect the rents, and, if necessary, sell the property in order to secure funds for the maintenance and support of complainant.

A pluries summons was issued October 24, 1921, requiring the defendant to answer the bill and the petition for sequestration. The summons was returned December 16, 1921, indorsed "Not found." On November 2, 1921, while the pluries summons was still out in the hands of the marshal, plaintiff filed an affidavit for service by publication, averring that, since April 25th, she had been unable to locate the defendant, and that he had been absent more than six months from the

District. Accordingly on the same day an order of publication was issued, requiring the defendant to—

"cause his appearance to be entered herein on or before the fortieth day, exclusive of Sundays and legal holidays, occurring after the day of the first publication of this order; otherwise, the cause will be proceeded with as in case of default."

Proof of publication, beginning November 4th and continuing for three successive weeks, as required, was duly made, and in March, 1922, the cause was calendared. On April 26, 1922, an order was passed, reciting certain of the previous proceedings, including the order of publication and proofs of publications thereof, and appointing appellee, Louis E. Tanner, sequestrator of premises 937 R street, this city, "belonging to defendant, Silas S. Thompson, and to manage and conduct the same and receive the rents and profits therefrom and to pay over to the plaintiff herein, for her maintenance and support pending the final determination of this cause, the net rents and profits thereof as the same shall accrue, subject to the further order of this court."

Defendant appeared specially and moved the court to set aside the order appointing a sequestrator, on the ground that the court was without jurisdiction to make the order as shown by the record and proceedings in this case, setting out the several grounds upon which the jurisdiction of the court was challenged. From an order appointing the sequestrator, and the order denying defendant's motion, this appeal was taken.

[1] The jurisdiction of the court to make the order appealed from is challenged on the ground that the order of publication, being made while the pluries summons was still outstanding in the hands of the marshal and not returned, is void. We think the notice of service by publication was prematurely made. Section 106 of the D. C. Code provides:

"No order for the substitution of publication for personal service shall be made until a summons for the defendant shall have been issued and returned 'Not to be found,' and the nonresidence of the defendant or his absence for at least six months shall be proved by affidavit to the satisfaction of the court."

Equity rule 27 of the District Supreme Court provides:

"Whenever a subpœna shall be returned not served as to any defendant the plaintiff shall be entitled to other subpœnas, 'toties quoties,' against such defendant, if he shall require it, until due service is made, provided that such other subpœnas when not served shall be returnable on the next rule day occurring twenty days after the issuance thereof."

The pluries summons, under the rule, was made returnable, if not served, "on the next rule day occurring 20 days after the issuance thereof," which carried it over until the rule day in December. Notwithstanding, on November 2d the affidavit was filed and the order for service by publication was made. In Plumb v. Bateman, 2 App. D. C. 156, a summons was issued and returned by the marshal, indorsed "Not to be found," on the same day it was issued. Within seven days thereafter the order of publication was made and published. The court, holding the service void, said:

"Congress did not intend to leave to the complainant, either by the statements of his bill, or by the verbal direction of his solicitor to the marshal, to determine the question of the feasibility of the service of a writ or to dispense with the attempt to serve it. Congress evidently meant that there should be some opportunity for a bona fide attempt to serve the writ. And yet, under this practice, if the defendants actually came within the jurisdiction at any time before the rule day, the marshal would have been precluded by his return from any further action."

[2] By the same rule, where a plaintiff elects to rely upon an alias or pluries summons, as he may under the rule, he must abide its due return before taking steps to secure service by publication. As suggested in the Plumb Case, up until the last day for return of the summons, the defendant may come into the jurisdiction and subject himself to personal service. Nor is it sufficient that the original and alias summons had been returned indorsed by the marshal "Not to be found." Each summons issued under the rule is the same in effect as an original summons, and the plaintiff must abide its due return before seeking constructive service. Besides, the pluries summons was the original and only one notifying defendant to appear and answer the petition for the appointment of a sequestrator, the matter involved in this appeal.

[3] The second jurisdictional ground advanced by appellant is that no affidavit appears showing that a copy of the notice of publication was mailed to the last known address of defendant. Section 108 of the D. C. Code, among other things, provides:

"No order or decree shall be passed against said absent or nonresident defendant upon proof of notice by such publication unless the complainant, plaintiff, his agent, or solicitor, or attorney shall file in the cause an affidavit showing that at least twenty days before applying for such order or decree he mailed, postpaid, a copy of said advertisement directed to the party therein ordered to appear, at his last known place of residence, or that he has been unable to ascertain the last place of residence of said party after diligent effort to ascertain the same."

No such affidavit was made in this case.

[4, 5] Constructive service is a statutory proceeding, and each step required to be taken is essential to the validity of the service. This defect was not cured by an averment, in the petition for the appointment of a sequestrator, that defendant was absenting himself from the District to avoid personal service, or an averment in the affidavit of publication that all efforts by plaintiff to locate defendant have been unavailing. The missing affidavit is jurisdictional, and the service, therefore, is void.

[6] A further jurisdictional objection is urged against the power of the court to sequestrate the property of defendant and apply the proceeds therefrom to the maintenance and support of plaintiff. An action for divorce is a proceeding in rem and a valid decree may be rendered without jurisdiction of the person of the defendant. Jurisdiction acquired by constructive service, whether by publication or by actual service of process on a defendant without the state, is sufficient to support a decree for divorce; but, in so far as it purports to be a personal decree for alimony, it is void. Bunnell v. Bunnell (C. C.) 25

Fed. 214; Rigney v. Rigney, 127 N. Y. 408, 28 N. E. 405, 24 Am. St. Rep. 462.

[7] Such a decree, based upon personal service on the defendant within the jurisdictional limits of the court, is good the world over; but, when based upon constructive service, it is void, unless jurisdiction is acquired by seizure of property of the defendant within the immediate jurisdiction of the court, when the judgment will be held valid only in respect of that property, and within the jurisdiction of the court rendering it. The general rule as to jurisdiction of the state over property, within its limits, for the protection of its citizens, was stated in Pennoyer v. Neff, 95 U. S. 714, 723 (24 L. Ed. 565), as follows:

"So the state, through its tribunals, may subject property situated within its limits owned by nonresidents to the payment of the demand of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the state where the owners are domiciled. Every state owes protection to its own citizens; and, when nonresidents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such nonresidents to satisfy the claims of its citizens. It is in virtue of the state's jurisdiction over the property of the nonresident situated within its limits that its tribunals can inquire into that nonresident's obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the nonresident have no property in the state, there is nothing upon which the tribunals can adjudicate."

[8] The power of a court in a divorce proceeding to subject property within its immediate jurisdiction belonging to a defendant, temporarily absent from the jurisdictional limits of the state, to the support of the wife, is well, though by no means unanimously, supported by authority. The theory, which seems to be a wise one, is that the proceeding is for the regulation of the status of the parties arising from the nature of the marriage relation. The wife is within the jurisdiction, at the place of the marital domicile. The husband, in disregard of that relation, has absconded to evade the process of the law, which would otherwise subject him and his property to the full discharge of the duties which the relation imposes. A suit for limited divorce, as in the present case, does not contemplate a decree which will totally abolish the marriage relation. The status will continue. It is unnecessary, therefore, to consider the application of the rule to an action for alimony embraced in a decree for absolute divorce, since that situation does not arise.

The exception to the general rule that a decree for alimony, based upon constructive service, is void, is well stated by Mr. Justice Holmes in Blackinton v. Blackinton, 141 Mass. 432, 436, 5 N. E. 830, 832 (55 Am. Rep. 484), as follows:

"The whole proceeding is for the regulation of a status. The incidents of that status are various—some concerning the person, some concerning the support, of the petitioner or her child. The order to pay money is not founded on an isolated obligation, as in a case of contract or tort, but upon a duty which is one of those incidents. The status, considered as a whole, is subject to regulation here, although it involves relations with another not here, because such regulation is necessary rightly to order the daily life, and to secure the comfort and support, of the party rightfully living within the jurisdiction. It is quite true that these considerations may not suffice to give

the decree extraterritorial force, and that, in general, courts do not willingly pass decrees, unless they think that other courts at least ought to respect them. But that is not the final test. We think that the statute was intended to authorize such decrees as that appealed from, and tacitly to adopt the rules as to service expressly laid down for divorce."

The jurisdiction thus acquired over the property of the defendant arises from the peculiar status of the parties. It is the marriage status which constitutes the res, making a divorce proceeding one in rem, and not an action in personam. An order to sequestrate property of the absent defendant, within the immediate jurisdiction of the court, is quasi in rem, issued to satisfy a personal claim on specific property. Thus the court acquires jurisdiction to render a judgment essentially in rem affecting such property, notwithstanding the absence of the owner from the state, and the impropriety of rendering a personal judgment against him. The judgment is not effective against the world, but only the interest of the defendant in the property.

"The plaintiff in her action below, did not seek, nor obtain, a personal judgment against the defendant. She and her child were residents of the county in which her suit was brought. The specific property which she asked to have subjected to her support was situated in that county, and she sought no other relief than its appropriation, or such part of it as might be necessary for that purpose, in fulfillment of the defendant's obligation to her in that behalf. The action and judgment were substantially in rem, in the sense that their direct object was to reach and dispose of property within the jurisdiction of the court." Benner v. Benner, 63 Ohio St. 220, 58 N. E. 569.

We think, therefore, that the statute (D. C. Code, § 975) authorizing the rendering and enforcement of personal decrees for temporary alimony, may well be extended to include the exceptional case, and make the property of the absconding defendant, within the jurisdiction of the court, respond to the legislative intent.

For the defects in service, the decree is reversed, with costs, and the cause remanded for further proceedings.